

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
SP3 – Mail Stop 5971
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

August 30, 2022

Honorable Judge Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street, Chambers 533
White Plains, NY 10601

    Re:    *SEC v. Amah*, 7:21-cv-06694-KMK-PED

Dear Honorable Judge Karas:

    Pursuant to Rule II (A) of Your Honor's Individual Rules of Practice and in accordance with the Court's scheduling order (Dkt. No. 22) and Your Honor's directive regarding pre-motion letters at the February 11, 2022 Initial Pretrial Conference, the Securities and Exchange Commission ("SEC") respectfully submits this pre-motion letter regarding its anticipated motion for summary judgment and requests a pre-motion conference concerning the motion.  The SEC intends to seek summary judgment on all five counts of the Complaint as there are no genuine disputes as to any material fact.  (Dkt. No. 1)

## Summary Judgment in Favor of the SEC is Appropriate for Counts I – III

    In Count III, to establish liability for a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, the SEC must show Amah "in connection with the purchase or sale of a security," acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device.  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996).  The same elements establish liability for Count I for a violation of Section 17(a)(1)-(3) of the Securities Act of 1933 (the "Securities Act"), except that scienter is not required for the SEC to enjoin violations under subsections 17(a)(2) and (3).  *SEC v. Genovese*, 553 F. Supp. 3d 24, 40 (S.D.N.Y. 2021).

    The factual record shows that it is undisputed that Amah repeatedly failed to disclose negative investment returns to investors, while also making misleading projections of future returns.  These statements, along with false performance statements Amah prepared and caused to be disseminated to investors, establish liability under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.  The falsity and materiality of Amah's misstatements, omissions, and his fraudulent performance statements are all undisputed.

It is undisputed that Amah's future projections of investment return were fraudulent. At the beginning of the MOSI-IT investment project, Amah made repeated projections of 100% returns or 75% returns without acknowledging that Lumine Fund (where he intended to place MOSI-IT funds) had already sustained substantial losses of over 50%. He continued to make projections after beginning to trade MOSI-IT funds, including projections of 3-3.5% returns, "modest single digit returns," and a 5% return projection, but those projections did not incorporate the massive losses that had occurred when the projections were made. Projections of future performance can be actionable under the antifraud provisions. *Kowal v. IBM Corp.*, 163 F.3d 102, 107 (2d Cir. 1998). The losses that had already accrued at the times Amah made such projections rendered those statements materially misleading. *Id.*

Further, Amah created two documents that purported to show MOSI-IT's performance from inception to the date specified on the document. It is undisputed that both of those documents were false and had no connection to the actual performance of MOSI-IT, which by this time had suffered near-total losses. Moreover, the very nature of these acts – lying to investors about their investment gains or losses – makes them material.

The "in connection with" element is established in two ways. First, the interests in the two investment vehicles at issue, MOSI-IT and Special Project, were themselves securities as they constituted investment contracts, because it was clear that investor assets would be pooled, invested together, and that any profits would be derived exclusively from Amah's efforts and distributed pro rata. *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) (a security can be established by the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets combined with the pro-rata distribution of profits). Second, MOSI-IT and Special Project involved the trading of securities which also satisfied this element.

The SEC must show scienter for Counts I and III. Scienter can be met with a showing of recklessness. *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). When Amah made the misstatements and omissions regarding projections and actual performance, it is undisputed that he had access to the underlying trading account data showing the true performance of MOSI-IT. In fact, throughout the time he made each misstatement, he routinely approved account statements prepared by the Fund Administrator that showed the substantial losses in the fund. Indeed, there was no credible way Amah could have met his projected rates of return after the substantial losses that had occurred. The scienter requirement is easily met.

To establish a violation of Section 17(a)(2), directly for Count I and aiding and abetting a violation for Count II, the SEC must first show that money or property was obtained by means of the misstatement or omission. For the direct violation in Count I, Amah received money or property into his personal account through Special Project, and the receipt of those funds was based on the misstatements and omissions regarding the success of MOSI-IT. For the aiding and abetting violation in Count II relating to MOSI-IT, the funds went to his business entity, ECA Capital, whose violations Amah aided and abetted. All of these facts are undisputed.

For aiding and abetting liability under Count II, the SEC must also establish (i) the existence of a primary securities law violation; (ii) knowledge of this violation on the part of the aider and abettor; and (iii) that the aider and abettor knowingly or recklessly provided substantial assistance in achieving the primary violation. *SEC v. Mattessich*, 407 F. Supp. 3d 264, 269, 273

(S.D.N.Y. 2019).  As Amah's actions described above are attributable to ECA Capital to establish the primary violation, *SEC v. Penn*, 2020 WL 1272285, at *4 (S.D.N.Y. Mar. 17, 2020), and all of the actions in support of that violation were through Amah, the standard for aiding and abetting liability is met.

**Summary Judgment in Favor of the SEC is Appropriate for Counts IV and V**

The course of conduct outlined above also establishes liability for Counts IV and V under the Investment Advisers Act of 1940 (the "Advisers Act"),[1] which additionally "'prohibits failures to disclose material information, not just affirmative frauds.'"  *Genovese*, 553 F. Supp. 3d at 41 (quoting *Dembski v. SEC*, 726 F. App'x 841, 844 (2d Cir. 2018)).  "Courts have recognized that '[f]acts supporting a Securities Act Section 17(a) or an Exchange Act Section 10(b) violation by an investment advisor will also support a showing of a Section 206 violation under the Advisers Act.'"  *Id.* (quoting *Dembski*, 726 F. App'x at 843-44).  As we have shown violations of the Securities Act and Exchange Act above, the only remaining issue under the Advisers Act claims is whether Amah is an "investment advisor" under the Act.  His undisputed actions establish this.

Amah was an investment adviser to Lumine Fund, MOSI-IT, the MOSI-IT advisory clients, and Special Project because, for compensation, he engaged in the business of advising each as to the value of securities or the advisability of investing in, purchasing, or selling securities.  *See* 15 U.S.C. § 80b-2(a)(11); *see Abrahamson v. Fleschner*, 568 F.2d 862, 869-71 (2d Cir. 1977).  Lumine Fund offering documents establish that Amah was entitled to both a management fee and a performance fee if trading was successful.  That alone is sufficient.  *SEC v. Fife*, 311 F.3d 1, 10-11 (1st Cir. 2002) (expectation of compensation if successful is sufficient to meet definition of investment adviser).  The Investment Management Agreements signed by MOSI-IT investors also reference fees to be paid, and the funds were placed within Lumine Fund which provided for fees.  Additionally, by having an adviser relationship with Lumine Fund, Amah had that relationship with any client whether or not compensation was received.  *See* Investment Advisers Act Release No. 3222, 76 Fed. Reg. 39646, 39669 (July 6, 2011) ("[O]nce a person meets that definition (by receiving compensation from any client to which it provides advice), the person is an adviser and the Advisers Act applies to the relationship between the adviser and any of its clients (whether or not the adviser receives compensation from them).").

For the reasons stated above, the SEC intends to move for summary judgment and seeks relief to file its motion as well as the appropriate pre-motion conference.

                                            Sincerely,
                                            /s Derek Bentsen
                                            Derek S. Bentsen
                                            bentsend@sec.gov
                                            202-551-6426

---

[1] In Count IV, Sections 206(1) and (2) prohibit courses of conduct that act as a fraud on the client.  In Count V, Section 206(4) similarly prohibits acts or practices that are fraudulent or deceptive and Rule 206(4)-8 prohibits fraudulent acts or misrepresentations to investors in a pooled investment vehicle.