UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br> v.<br><br>EVARIST C. AMAH,<br><br>         Defendant. | No. 21-CV-6694 (KMK)<br><br>OPINION & ORDER |

Appearances:

Derek S. Bentsen, Esq.
Eric S. Berelovich, Esq.
U.S. Securities and Exchange Commission
Washington, DC
*Counsel for Plaintiff*

Evarist C. Amah
Houston, TX
*Pro Se Defendant*

KENNETH M. KARAS, District Judge:

  The United States Securities and Exchange Commission ("SEC" or "Plaintiff") brought this Action against Evarist C. Amah ("Amah" or "Defendant") for violations of the Securities Act of 1933 ("Securities Act"), Securities Exchange Act of 1934 ("Exchange Act"), and the Investment Advisers Act of 1940 ("Advisers Act"). (*See generally* Compl. (Dkt. No. 1).) On September 28, 2023, the Court granted the SEC's Motion for Summary Judgment as to each of

1

its claims. (*See* Opinion & Order (Dkt. No. 61).)[1]  Now, before the Court is Plaintiff's Motion for Final Judgment and Remedies (the "Motion") against Defendant. (*See* Not. of Mot. (Dkt. No. 67).)  For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The Court assumes familiarity with the facts and procedural history of this case, which appear in detail in this Court's Summary Judgment Opinion. See *Amah*, 2023 WL 6386956. The Court supplements the background only with the procedural history of this case since the issuance of the 2023 Opinion.

### B. Procedural History

On September 28, 2023, this Court granted Plaintiff's Motion for Summary Judgment in full. *See id.*  The Opinion directed the SEC to submit a letter within one week of the issuance of the Opinion to describe the next steps it intends to take, if any. *See id.* at *19.  Plaintiff submitted a letter to the Court on October 6, 2023, explaining that it would meet and confer with Defendant to decide on a briefing schedule for remedies, and propose one to the Court by October 27, 2023. (*See* Dkt. No. 62.)  On October 27, 2023, the SEC filed a joint proposed briefing schedule, (*see* Dkt. No. 65), which the Court memo endorsed on the same day, (*see* Dkt. No. 66).

On January 24, 2024, Plaintiff filed its Motion for Judgement and Remedies. (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. for J. and Remedies ("Pl.'s Mem.") (Dkt. No. 68); Decl.

---

[1] The Court's summary judgment Opinion in this matter is published on Westlaw as: *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *1 (S.D.N.Y. Sept. 28, 2023).

of Timothy A. Work in Supp. of Mot. for J. and Remedies ("Work Decl.") (Dkt. No. 69).) Defendant submitted his Opposition on April 3, 2024. (*See* Letter Opp. ("Def.'s Opp.) (Dkt. No. 70).) On April 24, 2024, Plaintiff filed its Reply. (*See* Reply Mem. of Law in Supp. of Mot. for J. and Remedies ("Pl.'s Reply Mem.") (Dkt. No. 71).) On May 2, 2024, without requesting leave from the Court, Defendant filed a Sur-Reply. (*See* Supplemental Letter from Amah ("Def.'s Sur-Reply") (Dkt. No. 72).) The SEC filed a Sur-Sur-Reply on May 6, 2024. (*See* Supplemental Letter from SEC ("Pl.'s Sur-Sur-Reply") (Dkt. No. 73).)

## II. Discussion

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies . . . ." *Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). In the instant Motion, Plaintiff requests that the Court: (1) permanently enjoin Defendant from future violations of the securities laws; (2) order Defendant to pay disgorgement of $10,000 with prejudgment interest of $1617.82; and (3) order Defendant to pay a civil penalty of $669,687, which represents one third-tier penalty for each federal securities law statute Defendant violated. (*See* Pl.'s Mem. 1.) In response, Defendant contends that he should not be subject to disgorgement because he was not unjustly enriched. (*See* Def.'s Opp. 1.) In addition, Defendant argues that a civil penalty of $669,667 is disproportionate to the offense at issue, and in any event should not be ordered because public interest factors weight against the imposition of a penalty. (*See id.* at 2–3.) The Court addresses the propriety of each of these remedies in turn.

3

A. Injunctive Relief

Plaintiff argues that injunctive relief is appropriate in this case to prevent further violations of the federal securities law. Defendant does not counter Plaintiff's argument.[2]

"Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws." *Sec. & Exch. Comm'n v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998); *see* 15 U.S.C. §§ 77t(b), 78u(d)(1), 80b-9(d). "The SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct." *Id.* The following factors are relevant in determining the propriety of an injunction:

> the fact that [the] defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether [the] defendant continues to maintain that his past conduct was blameless; and whether,

---

[2] In his Sur-Reply, which Defendant submitted without leave from the Court, Defendant cursorily states that "[t]here is no need for the Court to permanent restrain and enjoin the [D]efendant as the [D]efendant is in no way a threat to anyone." (Def.'s Sur-Reply 2.) As an initial matter, the Court need not consider this submission because Defendant did not seek permission from this Court to file his Sur-Reply. *See Bisesto v. Uher*, No. 19-CV-1678, 2019 WL 2537452, at *2 (S.D.N.Y. June 20, 2019) ("[B]ecause no permission to file a sur-reply was sought or given, the Court will not consider it."); *see also Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018) ("The S.D.N.Y. local rules do not contemplate the submission of a sur-reply in further opposition to a motion, and this Court's Individual Rules provide that '[s]ur-reply memoranda will not be accepted without prior permission of the Court.'") (quoting Local Civil Rule 6.1)). But even assuming arguendo that Defendant requested the Court's permission to file a Sur-Reply, Defendant's argument, which he raises for the first time in his Sur-Reply and in a single conclusory sentence without any reasoning, is deemed waived. *See Am. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P.*, No. 03-CV-6913, 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) ("Issues not sufficiently argued in the briefs are considered waived.") (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196 (S.D.N.Y. 2022) (holding that defendant waived argument, where defendant did not press such argument in support of its motion or in opposition to cross-motions), *on reconsideration in part*, No. 16-CV-740, 2022 WL 3018104 (S.D.N.Y. July 29, 2022). In any event, the Court is not granting the requested injunctive relief by virtue of a default, but only after consideration of the appropriate factors.

4

>because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978) (internal quotation marks and citation omitted); *see also Cavanagh*, 155 F.3d at 135 (same). Additionally, "in assessing the strength of the showing concerning likelihood of future violations, the [C]ourt should consider the specific nature of the injunctive relief sought." *Sec. & Exch. Comm'n v. Lipkin*, No. 99-CV-7357, 2006 WL 435035, at *1 (E.D.N.Y. Jan. 9, 2006). "[T]he more onerous are the burdens of the injunction [the SEC] seeks," the "more persuasive [its] showing of its entitlement to a preliminary injunction" must be. *Sec. & Exch. Comm'n v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).

Here, the Court finds several factors weigh in favor of a permanent injunction. First, as detailed in this Court's Summary Judgment Opinion, Amah has been found liable for illegal conduct, including violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act as well as Rule 10b-5 thereunder, and Section 206 of the Advisers Act as well as Rule 206(4)-8 thereunder. *See Amah*, 2023 WL 6386956. In addition, the Court determined, in finding Amah liable for violations of the securities laws, that he acted with scienter—namely, that he "acted with reckless disregard for the truth." *Id.* at *14; *see also id.* ("Scienter . . . 'may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.'" (quoting *Sec. & Exch. Comm'n v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998))). Furthermore, Defendant's securities violations were not isolated, but continuous and systematic over a period of at least three years. *See id.* at *2–7. Additionally, Amah does not acknowledge his culpability with regard to his conduct. Specifically, in his opposition brief, Defendant states

that he "only got involved in [these] projects because he genuinely wanted to help a non-profit with no benefit to himself." (Def.'s Opp. 3.) Further, he asserts that he had "no intent to defraud; the only intention was to help, even though the outcome was different than expected." (*Id.* at 4.) Based on these statements, the Court finds that Amah continues to deny wrongdoing. Finally, but for any restrictions imposed by this Court, the record does not reflect any hindrances preventing Defendant from serving as an investment advisor in the future and engaging in similar conduct at issue in this case.

Taking into account all the applicable factors, the Court concludes that the requested injunction is appropriate. *See Sec. & Exch. Comm'n v. Cattlin*, No. 21-CV-5294, 2024 WL 1259101, at *11 (E.D.N.Y. Mar. 8, 2024) (recommending that the court issue a permanent injunction prohibiting defendant from committing further securities violations, where defendant acted "knowingly and intentionally" in carrying out a complicated scheme to defraud, perpetrated the scheme to defraud over a period of four years, failed to recognize his wrongdoing, and may be in a position in the future to have the opportunity to commit further violations), *report and recommendation adopted*, 2024 WL 1259387 (E.D.N.Y. Mar. 25, 2024); *Sec. & Exch. Comm'n v. SeeThruEquity, LLC*, No. 18-CV-10374, 2022 WL 171196, at *3 (S.D.N.Y. Jan. 19, 2022) (granting the SEC's request for injunctive relief against defendants, where the defendants were found liable, their fraud involved a high degree of scienter, the misconduct was repeated over several years, and there was a reasonable likelihood of future violation); *Sec. & Exch. Comm'n v. Bronson*, 246 F. Supp. 3d 956, 974 (S.D.N.Y. 2017) (holding that permanent injunction barring defendants from future violations of federal securities laws was warranted, where, inter alia, defendants' violation was founded on systematic wrongdoing,

6

rather than an isolated occurrence, defendants had yet to acknowledge culpability, and there was a possibility that defendants could commit future violations), *aff'd sub nom. U.S. Sec. & Exch. Comm'n v. Bronson*, 756 F. App'x 38 (2d Cir. 2018), *as amended* (Nov. 20, 2018) (summary order).

B.  Disgorgement

Next, the SEC seeks disgorgement of $10,000, which it contends constitutes the net ill-gotten gain Defendant received as a result of his fraud.  (*See* Pl.'s Mem. 8.)  Specifically, the Commission asserts that "[a]lthough Amah traded (and lost) the bulk of his advisory clients' assets, on two occasions he engaged in transactions that resulted in $10,000 being retained in, or diverted to, his personal accounts."  (*Id.*)  The Court agrees that disgorgement is appropriate.

"Once [a] district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering . . . disgorge[ment]." *Sec. & Exch. Comm'n v. Genovese*, 553 F. Supp. 3d 24, 47 (S.D.N.Y. 2021).  "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *First Jersey Sec., Inc.*, 101 F.3d at 1474; *see also Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th 379, 395 (2d Cir. 2023) ("Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct.").  "District courts are accorded broad discretion in calculating disgorgement amounts associated with securities law violations." *See U.S. Sec. & Exch. Comm'n v. Coronati*, No. 16-CV-2022, 2016 WL 6462240, at *3 (E.D.N.Y. Oct. 14, 2016), *report and recommendation adopted*, 2016 WL 6462261 (E.D.N.Y. Nov. 1, 2016).  "The only restrictions imposed upon courts in the awarding of disgorgement is that the amount constitute a

7

reasonable approximation of the profits causally related to the illicit activity." *Id.* In other words, "the amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *Sec. & Exch. Comm'n v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (alteration adopted) (quoting *Sec. & Exch. Comm'n v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013), *as amended* (Nov. 26, 2013)). "Once the SEC has met the burden of establishing a reasonable approximation of the profits causally related to the fraud, the burden shifts to the defendant to show that his gains 'were unaffected by his offenses.'" *Razmilovic*, 738 F.3d at 31 (quoting *Sec. & Exch. Comm'n v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996)).

Defendant maintains that he was not unjustly enriched and that, contrary to Plaintiff's argument, he lost a substantial amount of money from the investments at issue, and thus, disgorgement is not warranted. (*See* Def.'s Opp. 1.) Additionally, Defendant contends that even if he retained a net profit of $10,000, he paid more than $33,000 in business expenses from his personal accounts for which he was not reimbursed. Accordingly, his business expenses would need to be deducted from the alleged $10,000 gains, which would still leave him with $23,000 in unpaid expenses. (*See id.*)

Defendant's arguments are unavailing. That Defendant's financial scheme did not result in "net profits," does not diminish the fact that Amah retained $10,000 of the funds transferred to him by his clients. (*See* Pl.'s Mem. 8–9; *see also* Work Decl. ¶¶ 8–13.) Put simply, Defendant is not entitled to offset the losses he incurred through the fraudulent scheme on funds he diverted to himself. *Sec. & Exch. Comm'n v. Nadel*, 206 F. Supp. 3d 782 (E.D.N.Y. 2016) (determining that the SEC properly incorporated into its disgorgement calculation brokerage commissions that defendant retained even from the unlawful transactions that resulted in loss); *see also Sec. &*

8

*Exch. Comm'n v. Engler*, No. 20-CV-1625, 2022 WL 4596745, at *7 (E.D.N.Y. Sept. 30, 2022) ("The principal issue in determining the amount of disgorgement to be ordered is the amount of gain received by each defendant from the fraud." (alteration adopted) (quoting *Sec. & Exch. Comm'n v. Opulentica, LLC*, 479 F. Supp. 2d 319, 330 (S.D.N.Y. 2007)); *Lipkin*, 2006 WL 435035, at *2 (holding that disgorgement was appropriate in the amount that defendants diverted into personal accounts). Moreover, Defendant's argument concerning business expenses is unconvincing. Although, a court "may, in its discretion, deduct from the disgorgement amount any direct transaction costs . . . that plainly reduce the wrongdoer's actual profit," *Sec. & Exch. Comm'n v. McCaskey*, No. 98-CV-6153, 2002 WL 850001, at *4 (S.D.N.Y. Mar. 26, 2002), a deduction is not appropriate here because Defendant fails to submit adequate documentation that demonstrates he incurred such expenses. Rather, Defendant points the Court to Exhibit 7 filed with his opposition papers in connection with the summary judgment motion. (*See* Def.'s Opp. 1.) As Plaintiff notes, Exhibit 7, on its face, appears to be a two-paged, typed document that lists Defendant's purported expenses without any underlying support or explanation for them. (*See* Pl.'s Reply Mem. 4 (citing Ex. 7 (Dkt No. 49-10)).) To be sure, Defendant does not identify the sources on which this document is based, did not submit corresponding business records, or provide a sworn declaration corroborating the information in the document. Accordingly, the Court will not consider it with regard to disgorgement, *see McNutt v. Nasca*, No. 10-CV-1301, 2013 WL 209469, at *2 (N.D.N.Y. Jan. 17, 2013) (holding on summary judgment that the court would not consider a document because it was not authenticated by any witness, it was not dated, it was not signed, and it did not indicate who prepared the document), and therefore, finds no reason to reduce Plaintiff's requested disgorgement amount.

In addition, in connection with disgorgement, the SEC avers that an award of prejudgment interest is appropriate in the amount of $1,617.82. (*See* Pl.'s Mem. 9.) A court may award prejudgment interest on disgorged sums in order to fully compensate the wronged party for damages suffered. *See First Jersey Sec., Inc.*, 101 F.3d at 1476. "Requiring the payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *Sec. & Exch. Comm'n v. Rinfret*, No. 19-CV-6037, 2020 WL 6559411, at *6 (S.D.N.Y. Nov. 9, 2020) (internal quotation marks and citation omitted). "As with the award of disgorgement, the Court has broad discretion whether to grant prejudgment interest and what rate to use for the calculation." *Cattlin*, 2024 WL 1259101, at *8. However, "[t]he interest rate generally used to calculate disgorgement interest is the IRS's underpayment rate." *Sec. & Exch. Comm'n v. Shehyn*, No. 04-CV-2003, 2010 WL 3290977, at *7 (S.D.N.Y. Aug. 9, 2010). Here, the SEC applied the IRS underpayment rate to Defendant's ill-gotten gains from the date they were retained in Defendant's personal account through August 9, 2021, the date the SEC's complaint was filed, to determine the prejudgment interest amount. (*See* Pl.'s Mem. 9.) Accordingly, the Court determines that Plaintiff's imposition and calculation of prejudgment interest is appropriate.

In sum, the Court concludes that the SEC's requested disgorgement amount, including prejudgment interest, is proper.

C.  Civil Penalty

Finally, Plaintiff asserts that Defendant should be ordered to pay $669,667 in civil penalties, which is comprised of one $223,229 third-tier civil penalty for each of the three federal

securities acts he violated, because it appropriately punishes Defendant for his egregious misconduct and serves to deter future violations of the securities laws. (*See* Pl.'s Mem. 10–14.)

Upon a proper showing, Securities Act Section 20(d), Exchange Act Section 21(d)(3), and Advisers Act Section 209(e) each permits a court to impose civil penalties on a defendant who has violated the respective Act or the rules thereunder. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e); *see also Genovese*, 553 F. Supp. 3d at 45–46 ("The Securities Act, Exchange Act, and Advisers Act each authorize the SEC to seek the imposition of civil money penalties, and provide for three tiers of civil monetary penalties."). "Such penalties are designed to deter future violations of the securities laws and thereby further the goals of 'encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry.'" *Sec. & Exch. Comm'n v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009) (quoting *Sec. & Exch. Comm'n v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998)), *aff'd*, 438 F. App'x 23 (2d Cir. 2011) (summary order). "[W]hereas disgorgement merely restores the defendant to his original position without extracting a real penalty for his illegal behavior, the imposition of civil penalties is appropriate to accomplish the goal of punishment." *Id.* (alteration adopted) (internal quotation marks and citations omitted).

The statutes provide for three "tiers" of penalties, which increase based on the seriousness of the violation. Tier one is warranted for any violation. *See* 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i), 80b-9(e)(2)(A). Tier two is warranted for a violation involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii), 80b-9(e)(2)(B). Tier three is warranted when the violation also

"directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C).

For violations occurring after November 2, 2015, "the third-tier penalty amount for a natural person, which is the tier Plaintiff argues should apply to Defendant, is the greater of $230,464 per violation or the gross amount of the defendant's pecuniary gain from each violation." *Cattlin*, 2024 WL 1259101, at *10, *see also* Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2024), available at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.

Moreover, the Acts provide that the Court may impose a penalty for each "violation." *See* 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e).  However, because the statutes do not define the term "violation," courts in this district have adopted varied approaches with regard to what constitutes a "violation" for purposes of imposing civil penalties.  *See Sec. & Exch. Comm'n v. GTF Enters., Inc.*, No. 10-CV-4258, 2015 WL 728159, at *4 (S.D.N.Y. Feb. 19, 2015) (collecting cases); *see also Rinfret*, 2020 WL 6559411, at *8.  "For example, some courts have looked to the number of investors defrauded or the total number of fraudulent transactions, while others have considered the number of statutes that each [d]efendant violated, or whether the violations were all part of a single scheme." *Rinfret*, 2020 WL 6559411, at *8 (internal quotation marks and citation omitted).

Ultimately, the amount of any civil penalty rests squarely in the discretion of the Court. *See Sec. & Exch. Comm'n v. Lybrand*, 281 F. Supp. 2d 726, 729 (S.D.N.Y. 2003) ("District courts have discretion in determining the appropriate amount of any penalty."), *aff'd sub nom. Sec. & Exch. Comm'n v. Kern*, 425 F.3d 143 (2d Cir. 2005).  In assessing the relevant facts

and circumstances, courts typically consider the following factors, many of which overlap with the factors for permanent injunctive relief:

> (1) the egregiousness of the violations at issue; (2) [the] defendants' scienter; (3) the repeated nature of the violations; (4) [the] defendants' failure to admit their wrongdoing; (5) whether [the] defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) [the] defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to [the] defendants' demonstrated current and future financial condition.

*Lybrand*, 281 F. Supp. 2d at 730; *see also Sec. & Exch. Comm'n v. Zwick*, No. 03-CV-2742, 2007 WL 831812, at *26 (S.D.N.Y. Mar. 16, 2007), *aff'd*, 317 F. App'x 34 (2d Cir. 2008) (summary order) (similar).

Here, as described above, *see supra* Section II.A, the facts and circumstances are as such: in violating the securities laws, Defendant acted with reckless disregard for the truth, *see Amah*, 2023 WL 6386956, at *14; committed these violations repeatedly over a period of at least three years, resulting in at least $600,000 in losses, *see id.* at *2–7; and does not acknowledge his culpability with regard to his conduct, (*see* Def.'s Opp. 3–4). In addition, the record does not reflect that the civil penalty should be adjusted for Defendant's financial condition nor does Defendant provide any such reason. (*See generally* Def.'s Opp.) Accordingly, the Court concludes that a third-tier penalty should apply in this case. *See Cattlin*, 2024 WL 1259101, at *10 ("Given the seriousness of [defendant's] conduct and significant violations of the public trust, the Court agrees with the Commission and recommends imposing the third-tier penalty"); *Genovese*, 553 F. Supp. 3d at 46 (S.D.N.Y. 2021) (holding that a third-tier civil penalty was appropriate in a case involving a defendant, who defrauded at least five investors through multiple materially false statements and omissions in violation of several statutes, because of

defendant's continued failure to take responsibility for his actions, the substantial losses suffered by defendant's victims, and the blatant nature of the violations); *Sec. & Exch. Comm'n v. Lek Sec. Corp.*, 612 F. Supp. 3d 287, 296 (S.D.N.Y. 2020) ("The record demonstrates that the [d]efendants' conduct falls into the third tier of penalties because it involved fraud and created a significant risk of substantial losses to other investors."). Moreover, because Defendant violated three securities law, Plaintiff's requested civil penalty of $669,667, one third-tier penalty for each securities law Defendant violated, is appropriate. *See Shehyn*, 2010 WL 3290977, at *8 (assessing penalty for each statute violated); *Sec. & Exch. Comm'n v. Johnson*, No. 03-CV-177, 2006 WL 2053379, at *10 (S.D.N.Y. July 24, 2006) (assessing penalty for each statutory violation found by jury).

### III. Conclusion

For the foregoing reasons, the Court grants the SEC's Motion. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 67.)

SO ORDERED.

Dated: June 25, 2024
      White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE